**IN THE UNITED STATED DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CAROLYN SUMMERS, individually and by | ) | |
| and through her Next Friend, | ) | |
| CAROL SAMSON, | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| CAROL SAMSON, the personal representative | ) | |
| Of the ESTATE OF CARL LEE DEBRODIE, | ) | Case No.: 2:18-cv-04044-MDH |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SECOND CHANCE HOMES, LLC., | ) | |
| et al. | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>SUGGESTIONS IN SUPPORT OF DEFENDANT KAREN DIGH, CALLAWAY COUNTY, AND CALLAWAY COUNTY PUBLIC ADMINISTRATOR'S MOTION TO DISMISS, STRIKE, OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT</u>

Separate Defendants Karen Digh Allen, Callaway County Public Administrator's Office, and Callaway County filed a motion asking the Court to dismiss, strike, or order Plaintiffs to make the Complaint more definite and certain. Defendants offer the following memorandum of law in support of their motion to dismiss.

# TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................... 4

   I. Plaintiffs' Complaint should be dismissed or portions stricken for failure to comply with Federal Rules of Civil Procedure 10, 9, and 8. (All Counts) ........................................... 4

  II. Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claims for negligence through the doctrine of res ipsa loquitur (Count I) .............................. 7

  III. Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claims for negligence. (Count V) ......................................................................... 11

  IV. Plaintiffs fail to allege facts sufficient to support a state civil conspiracy claim. (Count VII) ...................................................................................................... 13

  V. Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claim for Right of Sepulcher. (Count VIII) ........................................................... 14

  VI. Any state law claims are barred by official immunity. (Counts I, V, VII, & VIII) ............... 15

  VII. Any state law claims are barred by sovereign immunity. (Counts I, V, VII, & VIII) ........... 17

 VIII. Plaintiffs fail to allege facts sufficient to support any §1983 violation. (Counts II, III, IV, &VI) ...................................................................................................... 18

  IX. Plaintiffs fail to allege facts sufficient to support any §1983 violation of the Fifth and/or Fourteenth Amendment against any individual defendant. (Counts II, III, IV) .......... 21

  X. Plaintiffs fail to allege facts sufficient to support any §1983 civil conspiracy claim. (Count VI)) ................................................................................................. 24

  XI. Any federal law claims are barred by qualified immunity. (Counts II, III, IV, & VI) ........... 26

**CERTIFICATE OF SERVICE** ........................................................................... 29

1

**TABLE OF AUTHORITIES**

**Case Law**

*Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293 (Mo. App. E. Dist. 2013)................... 14

*Anderson, v. Creighton*, 483 U.S. 635 (1987) ............................................................................ 27

*Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (C.A.9 (Cal.), 1981) ........... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 18

*Askew v. Millerd,* 191 F.3d 953 (8th Cir. 1999) .......................................................................... 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................... 5, 25

*Becker v. Ford Motor Co.*, 2010 WL 11582979, (E.D. Mo. Sept. 24, 2010) ........................ 9, 22

*Caruso v. City of St. Louis*, 2016 WL 6563472 (E.D. Mo. Nov. 4, 2016) .................................. 20

*Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588 (8th Cir.2004). .................. 21, 24

*Daniels v. Williams,* 474 U.S. 327 (1986) ................................................................................... 19

*Dupont v. Fred's Stores of Tennessee, Inc.*, 652 F.3d 878 (8th Cir. 2011).................................. 8

*Dunlop v. Munroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) ....................................................... 18

*Ehlers v. City of Rapid City*, 846 F.3d 1002 (8th Cir. 2017) ...................................................... 17

*Eversole v. Woods Acq., Inc.*, 135 S.W.3d 425 (Mo. App. W. Dist. 2004) .......................... 7, 10

*Furlong v. Stokes*, 427 S.W.2d 513 (Mo. 1968) ........................................................................... 8

*Gibbs v. Gen. Motors Corp.*, 350 Mo. 431, 166 S.W.2d 575 (1942) ......................................... 11

*Guffey v. Integrated Health Services of Kansas City at Alpine N.*, 1 S.W.3d 509 (Mo. App. W. Dist. 1999)................................................................................................................................. 7

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................... 26

*Harris v. City of Little Rock*, Ark., 2012 WL 601234 (E.D. Ark. Feb. 23, 2012) ..................... 12

*Hayden v. Nevada Cnty.*, 664 F.3d 770 (8th Cir., 2012) ............................................................ 22

*Hope v. Pelzer*, 536 U.S. 730 (2002). ................................................................................... 27, 28

*In re Est. of Collins*, 405 S.W.3d 602 (Mo. App. W. Dist. 2013)............................................... 15

*Jiang v. Porter*, 156 F.Supp.3d 996 (ED Mo. 2015) ................................................................. 17

*K.B. v. Waddle*, 764 F.3d 821 (8th Cir. 2014) ........................................................................... 16

*Krout v. Goemmer*, 583 F.3d 557 (8th Cir. 2009)....................................................................... 27

*Lane v. Sarpy County*, 165 F.3d 623 (8th Cir. 1999)................................................................... 19

*Larson by Larson v. Miller*, 76 F.3d 1446 (8th Cir. 1996) ........................................................ 25

*Letterman v. Does*, 859 F.3d 1120 (8th Cir. 2017)..................................................................... 16

*Lopez v. Accu-Screen, Inc.*, 2013 WL 12155464 (W.D. Mo. June 19, 2013) .............................. 7

*Madewell v. Roberts*, 909 F.2d 1203 (8th Cir. 1990) ................................................................. 19

*Martinez v. California*, 444 U.S. 277 (1980)........................................................................ 22, 26

*McCloskey v. Koplar*, 46 S.W.2d 557 (Mo. 1932) ....................................................................... 8

2

*Moody v. Kansas City Bd. of Police Commissioners*, 2017 WL 5318271 (Mo. App. W. Dist. Nov. 14, 2017), reh'g and/or transfer denied (Dec. 14, 2017), transfer denied (Mar. 6, 2018) .. 11

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986) ................................................................ 22

*Munz v. Parr*, 758 F2d 1254, 1259 (8th Cir. 1985) ................................................................ 20

*Oberkramer v. City of Ellisville*, 706 S.W.2d 440, 442 (Mo. banc 1986) ................................ 11

*Pearson v. Callahan*, 555 U.S. 233, 231(2009) ..................................................................... 26

*Ransom v. Grisafe*, 790 F.3d 804, 810–11 (8th Cir. 2015), cert. denied, 136 S. Ct. 838 (2016) 27

*Reed v. Conway*, 20 Mo. 22 (1854) ........................................................................................ 16

*Riley v. St. Louis County of Mo.*, 153 F.3d 627 (8th Cir. 1998) ............................................. 14

*Robb v. Hungerbeeler*, 370 F.3d 735 (8th Cir. 2004) ........................................................... 20

*Robertson v. Sichel,* 127 U.S. 507 (1888) .............................................................................. 18

*Schmidt v. Hosley Intern.*, Inc., 2015 WL 4134338 (E.D. Mo. 2015) ........................................ 8

*Schwartz v. Pridy*, 874 F. Supp. 256 (E.D. Mo. 1995), aff'd, 94 F.3d 453 (8th Cir. 1996) ........ 24

*Sides v. St. Anthony's Med. Ctr.*, 258 S.W.3d 811 (Mo. 2008) .................................................. 9

*S.M. v. Krigbaum*, 808 F.3d 335 (8th Cir. 2015) .................................................................... 18

*Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008) .......................................... 15, 16

*Stanard v. Nygren*, 658 F.3d 792 (7th Cir. 2011) ..................................................................... 4

*Stanley v. City of Indep.*, 995 S.W.2d 485 (Mo. 1999) .......................................................... 11

*United States. Baker v. McCollan*, 443 U.S. 137 (1979) ........................................................ 26

*Walls v. City of Bridgeton*, Mo., 2009 WL 2602193 (E.D. Mo. Aug. 24, 2009) ...................... 20

*W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7 (Mo. 2012) ............................................... 13

*Weisbrod v. Katz Drug Co.*, 223 S.W.2d 97 (Mo. App. 1949). .......................................... 9, 10

*Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733 (8th Cir. 1982) ................... 25

*Wiles v. Capitol Indem. Corp.*, 280 F.3d 868 (8th Cir. 2002) ................................................... 5

*Williams v. Bayer Corp.*, 2017 WL 6001531 (Mo. App. W. Dist. Dec. 5, 2017), transfer denied (Jan. 30, 2018) ........................................................................................................ 7

## Statutory Law

Revised Statutes of Missouri, Section 475.120 .................................................................. 15, 16

Revised Statutes of Missouri, Section 473.730(3) ................................................................... 16

Revised Statutes of Missouri, Section 537.600. ...................................................................... 17

United States Code, Title 42, Section 1983 ....................................................................... 4, 18-26

Federal Rules of Civil Procedure 8, 9, & 10 ......................................................................... 4-6

**I.** **Plaintiffs' Complaint should be dismissed or portions stricken for failure to comply with Federal Rules of Civil Procedure 10, 9, and 8. (All Counts)**

The Complaint Fails to Comply with Fed. R. Civ. Proc. 10(b), which requires plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." A district court's ruling on motions to dismiss pertaining to Rules 8 and 10 are reviewed for an abuse of discretion. *Stanard v. Nygren*, 658 F.3d 792, 796 (7th Cir. 2011). The first paragraphs of the Complaint are styled as "Parties" and "General Allegations" and consists of multiple allegations against multiple defendants and is not limited to a single set of circumstances. Also, throughout the Complaint, Plaintiffs cite to Missouri statutory law and regulatory law for the assertion that the "TCM Providers" breached their duty of care. (Complaint, pg. 17). However, none of these statutes or regulations apply to Defendants Callaway County, Callaway County Public Administrator or Karen Allen.

Similarly, Plaintiffs make the conclusory statement that 15 separately named Defendants violated constitutional rights. Specifically, Plaintiffs state, that the Defendants "violated Carl's constitutional rights in, ***among others***, failing: to properly supervise, to make monthly face-to-face with Carl; to make quarterly face-to-face visits with Carl; to have policies and procedures in place to ensure that such face-to-face visits could not be fabricated.]" The constitutional rights to which Plaintiffs are referring are unclear. It seems that Plaintiffs are asserting that Plaintiff has a constitutional right to receive care, and that right has been violated. Nonetheless, Plaintiffs' Complaint fails to state with particularity the facts giving rise to 1983 liability, as against each Defendant. For these reasons, Plaintiffs fail to limit, as far as practicable, each cause of action to a single set of circumstances. Thus, the majority of Plaintiffs'

Complaint should be stricken. Alternatively, Plaintiffs should be ordered to issue a more definitive statement.

Also, Plaintiffs accusations that the "TCM Providers" advanced falsities is not in compliance with Fed. R. Civ. Proc. 9(b). (Complaint, pg 20). Plaintiffs fail to state which defendants had the duty to generate the reports and where that duty is stated. Such allegations are conclusory and do not apprise which Defendants are being accused of the particular fraud. Such pleadings defy the Rule 9(b) that fraud be pled with particularity, and should be stricken or dismissed.

The Complaint Fails to Comply with Fed. R. Civ. Proc. 8 Rule 8(a)(2) requires that a complaint consist of "a short and plain statement of the claim showing that the pleader is entitled to relief. An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Indeed, "[w]hile the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

The Plaintiffs' Complaint is not short and plain, nor is it concise and direct, particularly in that, despite having twenty-three (23) named defendants, the Complaint defines overlapping groups of Defendants using collective terms such as "TCM Providers." – all to the effect of rendering distinct allegations uncertain as to the individual defendants. The circumstances of this case are vague, as there are several unknown factors, which is why Plaintiffs have made conclusory allegations in the hopes that some of their claims against some of the defendants will

stick. Most importantly, Plaintiffs do not know how or why Carl died, when he died, how he died, or who was responsible for his death or the disposal of his remains. Without that knowledge, Plaintiffs cannot arbitrarily reach the conclusion that Defendants Allen, Callaway County, and the Public Administrator are liable.

One of the main issues in contention in this matter is regarding whether Defendants Allen, Callaway County, and/or the Public Administrator owed a duty to Carl. In support of their position that these Defendants owed Carl a duty, Plaintiffs have provided several citations to manuals, statutes, and regulations. Only a few of those citations, however, apply to Defendants Allen, Callaway County, and/or the Public Administrator.  Whether a duty is owed is a legal conclusion. Thus, because Plaintiffs have made sweeping legal conclusions regarding the duties owed by the "TCM Providers," this Court should ignore Plaintiffs' assertion that Defendants Allen, Callaway County, and/or the Public Administrator owed any duty. Alternatively, this Court should order Plaintiffs to provide a more definitive statement regarding these issues.

Finally, Plaintiffs have failed to comply with Fed. R. Civ. Proc. Rule 9(a)(1). Plaintiffs have asserted several claims alleging constitutional violations. In order for the Federal Court to have jurisdiction over this matter, Plaintiffs must allege the basis for Plaintiffs' capacity to sue for constitutional violations. As pointed out in Plaintiffs' Complaint, Defendant Allen (the Public Administrator for Callaway County) was appointed the guardian and conservator for Carl Debrodie. In order to avoid a waste of judicial resources, given the fact that Plaintiffs have asserted several claims against twenty-three defendants, Plaintiffs should be ordered to provide a more definitive statement regarding Plaintiffs' capacity to sue.

## II. Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claims for negligence through the doctrine of res ipsa loquitur. (Count I)

Res ipsa loquitur is a doctrine based upon circumstantial evidence. *Williams v. Bayer Corp.*, 2017 WL 6001531, at *11 (Mo. App. W. Dist. Dec. 5, 2017), transfer denied (Jan. 30, 2018). The doctrine permits a jury to infer negligence without proof of specific negligent conduct on the part of the defendant. *Id.* To overcome a motion to dismiss, Plaintiff must allege the following three elements: "(1) the incident would not ordinarily occur in the absence of negligence; (2) the incident was caused by an instrumentality under the defendant's control; and (3) the defendant has superior knowledge about the cause of the incident." *Lopez v. Accu-Screen, Inc.*, 2013 WL 12155464, at *2 (W.D. Mo. June 19, 2013)(holding that, res ipsa did not apply and noting, "something unrelated to Defendants' carelessness could have occurred during that time to cause" the injury.) In this case, Plaintiffs have asserted a res ipsa loquitur cause of action for wrongful death against "all defendants."

The initial element requires the Court to consider whether the extraordinary event otherwise would not have occurred had it not be for the Defendants' failure to use due care. *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 371–72 (Mo. 2004), overruled on other grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013). "Whether a given event is an unusual occurrence ordinarily resulting from negligence "is a judicial decision which is arrived at by judges applying their common experience in life to the event ... and deciding whether the criteria for res ipsa loquitur are satisfied." *Eversole v. Woods Acq., Inc.*, 135 S.W.3d 425, 428 (Mo. App. W. Dist. 2004)(internal citations omitted); see also *Guffey v. Integrated Health Services of Kansas City at Alpine N.*, 1 S.W.3d 509, 514-15 (Mo. App. W. Dist. 1999)(stating, "In determining whether the facts and circumstances of a particular case allow for the application

of res ipsa loquitur, the trial court may apply the wisdom it has gained from common experience and should consider the character and nature of the incident and not the mere fact of its occurrence.")

Although Carl's body being found in a container in storage shed encased with cement is without a doubt, an extraordinary event, Plaintiffs' cannot sufficiently allege that Carl's body would not have ended up that way had it not been for the Defendants' failure to use due care. In other words, this Court must ask: even if Defendants used the most scrupulous standard of due care, could Carl still have ended up in a storage shed, encased in cement? The answer is yes, because there is a number of other factors that could have caused his death other than the negligence of Defendants. Whatever that other possible factor may be, Carl's death could not have been prevented by Defendants Allen, Callaway County, or the Public Administrator despite whether they used due care or not. Therefore, Plaintiffs cannot sufficiently plead that circumstantial evidence will reveal that but for Defendants' failure to use due care, Carl would not have died. Therefore, Plaintiffs have failed to state facts that plausibly meet the first element of their res ipsa loquitur claim. Accordingly, Count I should be dismissed as against Defendants Allen, Callaway County, and the Public Administrator.

"The second element requires control over the instrumentality that caused the injury at the time the injury occurred." *Schmidt v. Hosley Intern., Inc.*, 2015 WL 4134338, at *1 (E.D. Mo. July 8, 2015)(internal citations omitted). Courts have long held that "the requirement with respect to control may refer to right of control as well as actual control." *Furlong v. Stokes*, 427 S.W.2d 513, 517 (Mo. 1968); see also *McCloskey v. Koplar*, 46 S.W.2d 557, 560 (Mo. 1932). The purpose of the second element is "[t]o make certain that the injury has not been caused by somebody else, through some intervening negligence." *Dupont v. Fred's Stores of Tennessee,*

*Inc.*, 652 F.3d 878, 883 (8th Cir. 2011)(holding that res ipsa loquitur does not apply when "there [are] other possibilities which the jury could consider other than the negligence of the [defendant] being the sole cause of the [plaintiff's] injuries.").

Plaintiffs fail to sufficiently allege that Defendants Allen, Callaway County, or the Public Administrator had any control over the instrumentality which caused Carl Debrodie's death. In *Sides v. St. Anthony's Med. Ctr.*, the Missouri Supreme Court noted that a prima facie res ipsa loquitur claim requires the plaintiff to show that all the potential causes of the injury are within the control or right to control of defendants. 258 S.W.3d 811, 819 (Mo. 2008); see also *Becker v. Ford Motor Co.*, 2010 WL 11582979, at *8 (E.D. Mo. Sept. 24, 2010)(stating, "[t]he doctrine is used in cases in which it is not clear exactly what caused an injury, but all the probable causes are within the control or right to control of defendant."). "Where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the control of defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation." *Weisbrod v. Katz Drug Co.*, 223 S.W.2d 97, 99 (Mo. App. 1949). Res Ipsa is a doctrine that applies when the instrumentality of plaintiff's injury can be ascertained (i.e. a barrel of flour falling on a pedestrian, the malfunctioning of a product causing injury, a shelf collapsing on a customer at a store, ect).

In the case at hand, there are several different potential causes of Carl's death, as the cause and/or instrumentality is unknown. Because the instrumentality causing Carl's death is unknown, it is impossible for Plaintiffs to sufficiently allege that any defendant had control over that instrumentality. Therefore, Plaintiffs have failed to state facts that plausibly meet the second

element of their res ipsa loquitur claim. Accordingly, Count I should be dismissed as against Defendants Allen, Callaway County, and the Public Administrator.

Additionally, Defendants Allen, Callaway County, and the Public Administrator yielded control of Carl's health and well being to the skilled nursing facility. When a "third party enters into the situation and control is yielded to him[,] the injuring occurrence must be incident to the right of control to bring it within res ipsa loquitur." *Weisbrod,* 223 S.W.2d at 100. The *Weisbrod* court reasoned that "[i]f the mere right of control were to extend the doctrine to include the operation of those causes for which the defendant would otherwise be under no legal obligation, it would make the owner of any property liable for its harmful misuse even in the hands of a trespasser." *Id.* Because Defendants, here, yielded the control of Carl's care to the nursing facility, Defendants cannot be said to have control over any instrumentality that possibly caused Carl's death. Therefore, Plaintiffs have failed to state facts that plausibly meet the second element of their res ipsa loquitur claim. Accordingly, Count I should be dismissed as against Defendants Allen, Callaway County, and the Public Administrator.

The third element requires the defendants to have superior knowledge about the cause of the incident. Courts have held that "superior knowledge can be inferred when a defendant exercises exclusive control over the instrumentality in issue." *Eversole,* 135 S.W.3d at 429. Because the Defendants, here, did not exercise control over any instrumentality that could have caused Carl's death, superior knowledge cannot be inferred. However, if this Court is not persuaded by the above arguments and finds that the Defendants had control, the control had by Defendants is attenuated by time or circumstance. "When the evidence of control is attenuated by time or circumstance, there must be additional evidence to show the defendant has superior information, experience, or opportunity to know about the cause of the alleged occurrence."

*Id.* In this case, the control is attenuated by time or circumstance because Defendants Allen, Callaway County, and the Public Administrator did not have regular direct contact with Carl, and thus, had no way of knowing if something went wrong. Consequently, Defendants did not have opportunity to know about the cause of the alleged occurrence. See generally, *Gibbs v. Gen. Motors Corp.*, 350 Mo. 431, 166 S.W.2d 575, 581 (1942) (res ipsa is based on theory that one in charge of an instrumentality either knew the cause or has the **best opportunity** to know the cause of damage). Plaintiffs' failed to sufficiently allege facts concerning why or how Defendants Allen, Callaway County, or the Public Administrator would have had superior knowledge over the information, experience, or opportunity to know about the cause of the alleged occurrence.

Plaintiffs have failed to alleged sufficient facts for each element of their res ipsa claim as against Defendants Allen, Callaway County, and the Public Administrator. Accordingly, Count I should be dismissed as against these Defendants.

III. **Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claims for negligence. (Count V)**

To sue for negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach was a proximate cause of the plaintiff's injury. *Stanley v. City of Indep.*, 995 S.W.2d 485, 487 (Mo. 1999). In order to plead a sufficient claim, Missouri Courts have generally held that the Plaintiff must allege that the defendant violated specific statutes or formal policies. See generally, *Oberkramer v. City of Ellisville*, 706 S.W.2d 440, 442 (Mo. banc 1986); *Moody v. Kansas City Bd. of Police Commissioners*, 2017 WL 5318271, at *5 (Mo. App. W. Dist. Nov. 14, 2017), reh'g and/or transfer denied (Dec. 14, 2017), transfer denied (Mar. 6, 2018). Also, the Eighth Circuit "has

consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Harris v. City of Little Rock*, Ark., 2012 WL 601234, at *2 (E.D. Ark. Feb. 23, 2012). "The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence. . . . Each case is decided on its own facts, ... [and p]roximate cause cannot be based on pure speculation and conjecture." *Moody,* 2017 WL 5318271, at *3 (internal citations omitted). With regard to the first element, Plaintiff makes several blanket citations to statutory and regulatory laws for the proposition that Defendants have duties. (Complaint, pg. 16-18).

As previously indicated, Plaintiffs' Complaint is not plead with particularity - especially with regard to the specific duties owed to Carl by which defendants. Nonetheless, assuming *arguendo* that Plaintiff has sufficiently plead facts indicating that Defendants have a duty and that duty was breached, it is impossible for Plaintiff to plead facts sufficient to allege that Defendants' breach was a proximate cause of the injury. This is because, as Plaintiffs blatantly admit, no one knows how Carl died. Furthermore, no one knows how his body ended up in a storage shed encased in cement. Consequently, Plaintiffs' cannot sufficiently allege that Carl's body would not have ended up that way had it not been for the Defendants' failure to use due care. In other words, this Court must ask: had it not been for the Defendants' breach of their duties, would Carl still be alive? The answer is no.

Because we do not know how Carl died, finding otherwise would be based on pure speculation and conjecture. Carl's death was not a natural and probable consequence of the Defendants' alleged failure to attend the alleged required monthly face-to-face visits; Carl's death was not a natural and probable consequence of the Defendants' alleged failure to assure that Carl resided in the best and least restrictive setting reasonably available; Carl's death was not

a natural and probable consequence of the Defendants' alleged failure to assure that Carl received medical care and other needed services; Carl's death was not a natural and probable consequence of the Defendants' alleged failure to promote and protect the care, comfort, safety, health and welfare of Carl." (Complaint, pg. 16). Based on the fact that it would be pure speculation and conjecture to conclude that Carl's death was proximately caused by Defendants' alleged breach, Count V of Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

IV. **Plaintiffs fail to allege facts sufficient to support a state civil conspiracy claim. (Count VII)**

To demonstrate a civil conspiracy existed, Plaintiff must show: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) Plaintiffs were thereby damaged. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action. *Id.* Rather, it acts to hold the conspirators jointly and severally liable for the underlying act." *Id.* (internal citations omitted). The Missouri Supreme Court has further held that "[t]he gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." *Id.* "In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.* "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract or business expectancy." *Id.*

Because Plaintiffs have failed to sufficiently plead a negligence claim, Plaintiffs' civil conspiracy claim fails as well. See *Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 305 (Mo. App. E. Dist. 2013). If this Court does not find the above arguments persuasive and finds Defendants negligent, Plaintiffs' civil conspiracy claim still fails. In attempting to plead facts supporting this claim of conspiracy, the Plaintiffs in this case, make the conclusory allegation that "[T]hese Defendants, having a unity of purpose, common design, and/or understanding or meeting of the minds, entered in a conspiracy to unlawfully cover-up the facts and details of the Carl DeBrodie's death while living at the Facility." However, Plaintiffs fail to allege facts demonstrating a meeting of the minds to that end. (Complaint, pg. 40-41). Rather, Plaintiffs instead offer the additional conclusory statements that certain conduct of the Defendants was a "combined effort to cover-up the cause of Carl's death while living at the Facility, to deprive the Plaintiffs of their constitutional rights, including but not limited to their right to seek redress for their grievances through the courts, right to equal protection under the law, and right to due process of law." These allegations, essentially of a "coverup" of alleged constitutional violations after the fact, do not allege a meeting of the minds of the Defendants to commit any such constitutional violations in the first instance. Therefore, Plaintiffs Count VII fails to allege with specificity the elements of a Missouri civil conspiracy claim. Accordingly, this Court should dismiss Count VII of Plaintiffs' Complaint.

**V.     Plaintiffs fail to allege facts sufficient to support each element of Plaintiffs' state law claim for Right of Sepulcher. (Count VIII)**

In Missouri, "the next of kin have the right to possess the body for burial, the right to control the disposal of the body, and a right to maintain a claim for disturbance of the body. *Riley v. St. Louis County of Mo.*, 153 F.3d 627, 630 (8th Cir. 1998)(internal citations omitted).

"Missouri courts have abandoned the early fiction that the cause of action for interference with the right of sepulchre rested on the infringement of a quasi property right of the nearest kin to the body." *Id.* (internal citation omitted). Instead, Missouri courts base the cause of action on the mental anguish of the person claiming the right of sepulcher. *Id.* "The deprivation of this right typically involves a physical intrusion, mishandling, or manipulation of the deceased's body." *Id.* When "a power of attorney effectively grants the right of sepulcher to an attorney in fact designated in a valid durable power of attorney, the attorney in fact is considered the next-of-kin and has priority in exercising those rights." *In re Est. of Collins*, 405 S.W.3d 602, 605 (Mo. App. W. Dist. 2013).

Pursuant to RSMo. 475.120, the Public Administrator essentially acts as an attorney in fact for incapacitated adults, for whom the Public Administrator has been awarded custody. This is because the Public Administrator is responsible for making decisions on behalf of the incapacitated individual, including choosing a place to live and making financial decisions. Specifically, RSMo. 475.120 states, "***Only*** the director or chief administrative officer of a social service agency serving as guardian of an incapacitated person, or such person's designee, is legally authorized to act on behalf of the ward." (emphasis added). Because DeBrodie was a ward of the state, the Plaintiffs did not have the right to control the disposal of the body. Therefore, Plaintiffs have no standing to bring a claim for Right of Sepulcher. Accordingly, Defendants request the dismissal of Count VIII of Plaintiffs' Complaint.

## VI.     Any state law claims are barred by official immunity. (Counts I, V, VII, & VIII)

Missouri has long-applied the doctrine of official immunity to "protect[ ] public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263

S.W.3d 603, 610 (Mo. 2008); *Reed v. Conway,* 20 Mo. 22 (1854). "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued," *Letterman v. Does*, 859 F.3d 1120, 1125–26 (8th Cir. 2017)(internal citation omitted). In contrast, a ministerial function "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed," *Id.* (quotation omitted). However, official immunity does not apply where the discretionary act "is willfully wrong or done with malice or corruption." *Id.* (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc).

In *K.B. v. Waddle*, the Court evaluated whether a statute requiring a public employee to report suspected child abuse was considered clerical or discretionary. 764 F.3d 821, 825 (8th Cir. 2014). The court found that the act was discretionary because the employee must have "reasonable cause" to suspect the abuse, which requires the employee to exercise some personal judgment. *Id.* The Court further noted "[T]hat an official might exercise poor judgment in a given case does not remove the conduct from the category of discretionary acts." *Id.*

Plaintiffs' Complaint indicates that pursuant to RSMo. 475.120, Defendant Allen owed Carl the duty to assure that Carl resided in the best and least restrictive setting reasonably available; to assure that Carl received medical care and other needed services; to promote and protect the care, comfort, safety, health and welfare of Carl. Revised Statutes of Missouri 473.730(3) specifically states, "**The duties specified by section 475.120 are discretionary.**" By statute, Defendant Allen is required to exercise her personal judgment. Therefore, her acts as Public Administrator are considered discretionary and she is entitled to official immunity.

In regard to Plaintiffs' assertion that Defendant Allen had a duty to attend and document monthly and/or quarterly face-to-face evaluations with Carl, Plaintiffs provide no authority for that obligation. Therefore, Defendant Allen did not have any obligation to attend any face-to-face investigation/evaluations. Even if she did have some sort of obligation to monthly or quarterly evaluate Carl, she must have exercised her professional judgment in doing so. Thus, assuming *arguendo* that she had an obligation to meet with Carl face-to-face, this would have been a discretionary act, and she would be entitled to official immunity for any claim that the breach of that duty/obligation caused injury. Therefore, any state law tort claim asserted against Defendant Allen is barred by the doctrine of official immunity.

**VII.** **Any state law claims are barred by sovereign immunity. (Counts I, V, VII, & VIII)**

Plaintiff's cause of action against Defendants is barred by sovereign immunity, because Plaintiffs have failed to plead the existence of any exception to this doctrine of immunity. Mo. Rev. Stat. § 537.600. "Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent." *Jiang v. Porter*, 156 F.Supp.3d 996, 1007 (ED Mo. 2015) (internal citations omitted). "It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived." *Id.* "Because the liability of a public entity for torts is the exception to the general rule of sovereign immunity, **a plaintiff must specifically plead facts demonstrating that the claim is within an exception to sovereign immunity**. *Id.* Statutory provisions waiving sovereign immunity are to be narrowly construed. *Id.*

Plaintiff's Complaint does not specifically allege any of the exceptions to sovereign immunity. Plaintiff's Complaint only states the following, "[O]n information and belief, Defendants [] have purchased liability insurance related to, and that provides coverage for the

claims asserted herein." (Complaint, pg. 13). This general assertion is not sufficiently specific to place all claims against all defendants within an exception to sovereign immunity. Therefore, any claims against Callaway County are barred by the sovereign immunity doctrine.

**VIII.    Plaintiffs fail to allege facts sufficient to support any §1983 violation. (Counts II, III, IV, & VI)**

"[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009)(emphasis added); *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)(stating that "Government officials are personally liable only for their own misconduct."). Throughout Plaintiffs' Petition, Plaintiffs refer collectively to defendants as "TCM Providers" and fail to indicate that Defendant Allen, Callaway County, or the Public Administrator violated Plaintiff's rights through their own individual actions. This basis alone is sufficient for this Court to order dismissal, or alternatively, order a more definitive statement of all federal causes of action pursuant to *Ashcroft*. 556 U.S. at 676.

**A. <u>Allen</u>**

Courts have long held that Government officials cannot be held liable for the acts of their subordinates. *Dunlop v. Munroe,* 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (an official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties.") "Government officials are personally liable only for their own misconduct." *S.M.*, 808 F.3d 340.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

In the case at hand, Defendant Allen acted as the Public Administrator. Defendant Allen can only be held responsible for her own misconduct. Her duties, as Public Administrator, required that she select a housing facility for Carl and manage any of his finances. She was not required to personally care for Carl. Thus, whatever happened to Carl did not occur while he was under the direct care of Defendant Allen. The state-approved housing facility or any other individual to whom Defendant Allen delegated duties, would be considered a "subordinate." Under 1983, Defendant Allen cannot be held responsible for the acts taken by any subordinates in this case. Therefore, any federal 1983 claims should be dismissed as against Defendant Allen.

As previously indicated, Defendant Allen, (and/or the Public Administrator) was not negligent because even if everything in Plaintiffs' Complaint is taken as true, it is impossible for Plaintiffs to adequately plead facts showing that the proximate cause element is met. Nonetheless, even if this Court finds that any of the Defendants acted negligently, Plaintiffs' 1983 claims should be dismissed because negligent conduct does not give rise to liability under 42 U.S.C. § 1983. *Lane v. Sarpy County,* 165 F.3d 623, 624 (8th Cir. 1999). Even gross negligence is not actionable under §1983. See *Daniels v. Williams,* 474 U.S. 327, 328 (1986)("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

## B. Callaway County Public Administrator

It has long been held that in "cases under § 1983, a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon v. Holt*, 469

U.S. 464, 464 (1985). Accordingly, in an official capacity suit, the suit is to be treated as a suit against the governmental entity. *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004). "It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer." *Caruso v. City of St. Louis*, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016).

Plaintiff has asserted claims against Defendant Allen and the Public Administrator. Because Defendant Allen is the Public Administrator, it seems that Plaintiff is suing Defendant Allen in her official and individual capacity. Because suit against Defendant Allen in her official capacity is a suit against Callaway County, her employer, the suit against Defendant Allen in her official capacity (or against "the Public Administrator") is duplicative. Therefore, it is proper for this Court to dismiss all counts against the "Public Administrator."

## C. <u>Callaway County</u>

"Plaintiff must identify a governmental 'policy or custom that caused the plaintiff's injury." *Walls v. City of Bridgeton*, Mo., 2009 WL 2602193, at *3 (E.D. Mo. Aug. 24, 2009). The Plaintiff must allege facts indicating that the governmental custom is so persistent and widespread that it becomes permanent and well settled, as to have the effect and force of law. *Id.* To sufficiently state a cause of action for such a claim, the plaintiff must allege with some degree of specificity the policy or custom which violates her constitutional rights. See *Munz v. Parr*, 758 F2d 1254, 1259 (8th Cir. 1985)(where the court held that bare allegations that the defendants had "established a 'practice' of concealing the unlawful acts of their officers and agents" constituted conclusory statements and were not sufficient to state a cause of action against the city and county). "At a minimum, a complaint must allege facts which would support

the existence of an unconstitutional policy or custom." *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir.2004).

Plaintiffs have failed to allege any facts supporting any assertion that Callaway County had a widespread policy or custom that was so pervasive that it can be said to have the full force and effect of law. In fact, Plaintiffs only allege that Callaway County did not have a custom or policy in place and that the failure to have a policy likely resulted in a violation of constitutional rights. Specifically, Plaintiffs make the following general allegation and conclusion of law, "The need to have a policy or custom in place for the auditing and verification of mandated, monthly face-to-face contacts with individuals with developmental disabilities is obvious, and the inadequacy of existing practice was and is likely to result in the violation of constitutional rights of individuals with developmental disabilities, such that these Defendants can be said to be deliberately indifferent to the needs of individuals with developmental disabilities who cannot ensure for their own safety and well-being." (Complaint, pg. 34).

It is unclear what constitutional right Plaintiffs are alleging was violated. Furthermore, Section 1983 requires allegations of widespread misconduct or existence of a policy or custom that violates rights - not the failure to act or non-existence of a policy or custom.

## IX. Plaintiffs fail to allege facts sufficient to support any §1983 violation of the Fifth and/or Fourteenth Amendment against any individual defendant. (Counts II, III, IV)

Plaintiffs' Complaint alleges violations of due process, right to life and bodily integrity. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. Nor does the Due Process Clause transform every tort committed by a state actor into a constitutional violation." *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011)(citations omitted). Furthermore, "Causation is an

essential element of a section 1983 cause of action." *Morton v. Becker, 793 F.2d 185*, 187 (8th Cir.1986); *see Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ("not every injury in which a state official has played some part is actionable"). *Hayden v. Nevada Cnty.*, 664 F.3d 770 (8th Cir., 2012). Also, commenting on *Martinez*, the 9th Circuit has stated, "Although the Court saw no need to decide the proximate cause issue, it appears to have employed elements of proximate cause analysis in determining state action." *Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (C.A.9 (Cal.), 1981).

Plaintiffs allege, in paragraph 119 of their Complaint, that it is incorporating and re-alleging the foregoing paragraphs as if fully set forth herein. Thus, it appears that Plaintiff includes paragraphs 1-118 in its argument in support of a civil rights violation pursuant to 42 U.S.C. §1983. In these foregoing paragraphs Plaintiffs cite a number of Missouri statutes or codes of regulations which purportedly create obligations or duties owed to Carl DeBrodie by multiple Defendants. In as much as Plaintiffs attempt to create a constitutional right owed to Carl Debrodie by Defendant Allen pursuant to state statutes or regulations, these rights, assuming they do exist, are not rights secured by the Constitution and laws of the United States. Thus, Plaintiff has failed to state a claim for which relief can be granted against Defendant Allen in Count II.

Furthermore, Plaintiff alleges in paragraph 22 that in late 2016 and/or early 2017 Defendant Allen "**violated Carl's constitutional rights** in, among others, failing to properly supervise Carl, the residents of the Facility, the employees of the Facility, and individuals performing targeted case management for Carl; failing to make mandated, non-discretionary monthly face-to-face visits with Carl; failing to make quarterly face-to-face visits with Carl; failing to have policies and procedures in place to ensure that such face-to-face visits could not

be fabricated; and fabricating records and logs to indicate such contacts had been made." According to the plain language of Plaintiffs' Complaint, it appears that Plaintiffs purport to assert that Carl had a constitutional right to supervision of himself and others, face-to-face visits, and policies and procedures regarding such visits as well as a right to not have records or logs fabricated. Again, Plaintiff seems to be pointing to purported obligations created by state laws or regulations, which were violated. Plaintiff points to no United States Constitutional right or law that guarantees these rights.

Plaintiff makes no connection between any rights guaranteed by the fifth and/or fourteenth amends of the United States Constitution and how those rights are connected to any duty under state law regarding supervision, face-to-face visits, policies and procedures or record keeping. Although unclear, Plaintiff may be alleging that Carl DeBrodie's fifth and/or fourteenth amendment rights were violated because he died while Defendant Allen was assigned as his guardian. Plaintiffs admit, however, that Carl's date of death is unknown as well as his cause of death. Plaintiff has failed to allege any connection between the alleged failures to supervise, provide face-to-face visits, create policies and procedures regarding face-to-face visits or record keeping. Even if Defendant Allen failed in all these regards, how did these failures lead to the deprivation of Carl's life or bodily integrity? There is absolutely no causal connection alleged.

In Count III Plaintiff again alleges a civil rights violation pursuant to 42 U.S.C. §1983 by violating the fifth and/or fourteenth Amendments to the U.S. Constitution. The allegations contained therein seem to assert a constitutional violation by way of "failing to establish adequate and sufficient policies and procedures for training supervisors and case workers to safely effectuate the proper provision of targeted case management services. For the same

reasons mentioned above, Count III fails to allege any causal connection as to how these failures led to a violation of any right created by the Constitution or laws of the United States.

In Count IV the Plaintiff again alleges a civil rights violation pursuant to 42 U.S.C. §1983 by violating the fifth and/or fourteenth Amendments to the U.S. Constitution. The allegations contained therein seems to assert a constitutional violation against Defendant Callaway County and the Callaway County Public Administrator by failing to create a policy, procedure, or custom whereby reports of mandated, monthly face-to-face contacts could be audited and/or verified by an individual other than one making the report. As previously indicated, "[a]t a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom," not an absence of a policy or custom. See *Crumpley*, 388 F.3d at 590. For the same reasons mentioned above, Count IV fails to sufficiently allege that County is subjected to §1983 liability for failure to have a policy requiring the auditing of Carl's face-to-face visits. Furthermore, Plaintiffs fail to sufficiently allege any causal connection as to how these failures led to a violation of any right created by the Constitution or laws of the United States.

Based on the foregoing reasons, Counts II, III, and IV should be dismissed, as Plaintiff has failed to allege sufficient facts to state a plausible constitutional violation by Defendants Allen, Callaway County, or the Public Administrator.

## X.     Plaintiffs fail to allege facts sufficient to support any §1983 civil conspiracy claim. (Count VI)

"To set forth a conspiracy claim under § 1983, plaintiff must allege there was a mutual understanding, or a meeting of the minds' among the alleged conspirators…In particular, this requires allegations of specific facts showing a meeting of minds among the alleged conspirators." *Schwartz v. Pridy*, 874 F. Supp. 256, 258 (E.D. Mo. 1995), aff'd, 94 F.3d 453 (8th

Cir. 1996)(citations omitted). To prove a §1983 conspiracy claim, a plaintiff must show: (1) that the defendants conspired to deprive him of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999). Most importantly, "the plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 civil conspiracy claim." *Id.*

For a claim of conspiracy under § 1983, the plaintiff need not show that each participant knew "the exact limits of the illegal plan. . . ," but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996). The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy. *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982).

The pleading standard set forth in Fed. R. Civ. P. 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A complaint that pleads facts "merely consistent with" a defendant's liability, fails to state a claim to relief that is plausible on its face. *Id.*

In the case at hand, Plaintiffs fail to effectively plead that their constitutional rights were violated. Additionally, there absolutely no allegations to support that Defendant Allen had a meeting of the minds with any of the other Defendants. There are only bald allegations regarding

the requisite factors, but absolutely no facts to support the allegations. Also, in the headline of Count IV, Plaintiff lists Sections 1983, 1985 and 1986. Section 1985 has three subsections, none of which would apply to the case at hand, but even if they do, there is no allegation listing the requisite factors to meet the standard so listed. Also, Section 1986 refers back to Section 1985 and requires "the wrongs conspired to be done, and mentioned in section 1985," as a further requirement. Since Plaintiffs have failed to state a claim for which relief can be granted under Section 1985, the allegation of civil conspiracy under 1986 also fails.

XI.    **Any federal law claims are barred by qualified immunity. (Counts II, III, IV, & VI)**

The first inquiry in any suit brought under 42 U.S.C. §1983 is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). If not, then there is no need for us to reach the question of immunity because Plaintiffs would have failed to state an actionable claim under §1983. *Martinez* 444 U.S. at 284.  In the event that this Court does not dismiss Count II and III for the reasons set forth above, Defendant Allen is entitled to qualified immunity from liability for any alleged federal civil rights violation described in Plaintiffs' Complaint. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); see also *Pearson v. Callahan*, 555 U.S. 233, 231(2009).

The inquiry on a motion to dismiss brought by an official seeking qualified immunity, requires the Court to consider: 1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008

(8th Cir. 2017). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). As stated above, Plaintiff has failed to show that Defendant Allen violated any constitutional rights. However, if this Court does not find the above-stated arguments persuasive, Defendant Allen is still entitled to qualified immunity because the violation was not clearly established at the time of the conduct.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson, v. Creighton*, 483 U.S. 635, 640 (1987); *see also Ransom v. Grisafe*, 790 F.3d 804, 810–11 (8th Cir. 2015), cert. denied, 136 S. Ct. 838 (2016). A plaintiff need not show that the "very action in question ha[d] previously been held unlawful," but he must establish that the unlawfulness was apparent in light of preexisting law. *Id.* In other words, we must ask whether the law at the time of the events in question gave "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In the case at hand, Plaintiffs allege that certain statutes and/or regulations apply to twenty-three separately named defendants, and attempts to lump all defendants together and claim that all cited laws apply to all named defendants. In paragraphs 56, 57 and 62, plaintiff cites Missouri statutes that apply to the duties of a Missouri Public Administrator. Plaintiff then cites other statutes and Missouri Regulations that do not apply to Missouri Public Administrators but adds Defendants Public Administrator and Allen into the collective group of individuals and entities called "TCM Providers." Plaintiffs then allege that additional statutes and regulations mandate the actions of some of the entities and collectively refer to them by the term "TCM Providers." However, those statutes and regulations do not apply to Defendants Public

Administrator or Karen Allen. Nowhere in Missouri Statutes chapters 472-475 are any duties created by law that Defendants Public Administrator or Karen Allen must, "properly supervise Carl, the residents of the Facility, the employees of the Facility, and individuals performing targeted case management for Carl; failing to make mandated, non-discretionary monthly face-to-face visits with Carl; failing to make quarterly face-to-face visits with Carl; failing to have policies and procedures in place to ensure that such face-to-face visits could not be fabricated; and fabricating records and logs to indicate such contacts had been made," as alleged by Plaintiffs. (Complaint, pg. 16). Furthermore, no other cases, statutes or regulations were cited that would have provided "fair warning" that Defendants Public Administrator and Karen Allen that their conduct was unconstitutional, as required by *Hope*. 536 U.S. at 741.

Therefore, Plaintiffs have failed to overcome the doctrine of qualified immunity, and as such, this Court should dismiss Counts II, III, IV, and VI of Plaintiffs' Complaint.

WHEREFORE, Defendants Karen Digh Allen, Callaway County Public Administrator's Office, and Callaway County, Missouri pray the Court Dismiss Counts I, II, III, IV, V, VI, VII, and VIII along with such other relief as this Court deems just and proper.

Respectfully Submitted,

*/s/ Ross A. Bridges*
Ross A. Bridges #62762MO
3901 S. Providence, Suite D
Columbia, Missouri 65203
Tel:    (573)777-4488
Fax:    (573)777-4489
Email: Ross@vbmlaw.com
**Lead-Attorney for Defendants: Karen Digh Allen, Callaway County Public Administrator's Office, and Callaway County, Missouri**

*/s/ Sarah L. Crawford*
Sarah L. Crawford #70010MO
3901 S. Providence, Suite D

Columbia, Missouri 65203
Tel:    (573)777-4488
Fax:    (573)777-4489
Email: Sarah@vbmlaw.com
***Attorney for Defendants: Karen Digh
Allen, Callaway County Public Administrator's
Office, and Callaway County, Missouri***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon all counsel of record on this 30th day of March, 2018 via the Court's electronic filing system.

Respectfully Submitted,

*/s/ Ross A. Bridges*
Ross A. Bridges #62762MO

*/s/ Sarah L. Crawford*
Sarah L. Crawford #70010MO