IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CAROLYN SUMMERS, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 2:18-CV-04044-MDH |
| SECOND CHANCE HOMES OF FULTON, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is State Defendants' Motion to Dismiss Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 69). State Entity Defendants, who are only named in Count V of the Complaint, are the Missouri Department of Mental Health (DMH) and its Division of Developmental Disabilities (DMH-DD). Individual Defendants, who are only named in Count IV of the Complaint, are Mark Stringer, Valerie Huhn, Wendy Witcig, Marcy Volner, and Wendy Davis. They are sued in both their individual capacities and in their official capacities as employees of DMH. For the reasons explained below, the Court will grant the Motion to Dismiss as to both the State Entities and the State Employees in their official and individual capacities.

## BACKGROUND

For a period of time after Carl DeBrodie was appointed a guardian but before his death, he was housed by Second Chance Homes of Fulton. Second Chance is a private, for-profit entity that provides a residential healthcare facility for individuals with developmental disabilities. DMH, through DMH-DD, contracted with Second Chance to provide its residential healthcare facilities

1

to the developmentally disabled. Second Chance received money from federal and state sources in exchange for its services, and was licensed to accept residents by DMH in accordance with Missouri law. RSMo. § 630.710, *et seq.* At the time of the events giving rise to this action, Mark Stringer was the director of DMH, responsible for the overall operation of the Department. Valerie Huhn was the director of DMH-DD, responsible for the operation of the division that supervises the certification of residential healthcare facilities like Second Chance. Wendy Witcig was DMH-DD's deputy director, responsible for Community Operations in the division. Wendy Davis was the director of DMH-DD's Central Missouri Regional Office, which includes Callaway County. Marcy Volner was the assistant director of DMH-DD for the Central Missouri Regional Office. Each of the defendants are either directly involved in the licensing and regulation of residential healthcare facilities that serve developmentally disabled individuals or hold a supervisory position over officials who are. DMH also provided funding and resources to Callaway County Special Services (CCSS), a non-profit entity that provided support and case-management services for DeBrodie on behalf of the Callaway County Public Administrator.

Plaintiffs' action filed under 42 U.S.C. § 1983 claims that State Defendants violated DeBrodie's rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiffs claim that the State Defendants failed to establish and enforce rules and procedures to monitor, supervise, and otherwise ensure the safety of disabled individuals in residential care facilities such as DeBrodie. Plaintiffs further argue that State Defendants' failure to adequately ensure the safety of disabled individuals was the direct and proximate cause of DeBrodie's emotional distress, physical pain, and eventual death. Plaintiffs request all damages allowable under law, including punitive damages.

## **STANDARD OF REVIEW**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the Court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

**A. Carol Samson Is A Proper Plaintiff In This Action**

State Defendants claim that Ms. Samson, who is the personal representative of the estate of Carl DeBrodie, is not a proper Plaintiff in this case. State Defendants point to the first paragraph of Plaintiff's complaint, which identifies their action as resulting from both the wrongful death of DeBrodie and the violation of his civil rights under 42 U.S.C. § 1983. State Defendants argue that

3

the Complaint alleges that these two claims are not independent—that, according to the Complaint, the sum of State Defendants' violations of § 1983 led directly to the wrongful death of DeBrodie. The distinction is crucial because if the claim is solely to recover for acts that resulted in DeBrodie's death, the Missouri wrongful death statute is the sole vehicle by which a claim can be brought. *Andrews v. Neer*, 253 F.3d 1052, 1058 (8th Cir. 2001). Under Missouri's wrongful death statute, only Carolyn Summers, as the biological mother of DeBrodie, is a proper plaintiff. RSMo. § 537.080. Alternately, if there is a § 1983 claim arising from acts that did not result in DeBrodie's death, Samson, as the personal representative of the estate, would be a proper plaintiff to recover damages in this case.

In support of their argument, State Defendants cite chiefly to parts of the Complaint that identify the death of DeBrodie as the result of State Defendants' policies and conduct and request as relief funeral expenses and the value of DeBrodie's future estate. In response, Plaintiff's state that their Complaint alleges that DeBrodie suffered numerous injuries that preceded and did not result in his death, and that their § 1983 claims seeking recovery for these injuries are separate from their wrongful death claims.

The Court does not consider the Plaintiff's Complaint a model of clarity on this matter. However, after carefully reviewing the Complaint, the Court finds allegations that DeBrodie suffered injuries in the months and years preceding his death that may be linked to State Defendants' alleged constitutional violations but did not contribute to his ultimate death in the autumn of 2016. These injuries could therefore lead to causes of action that fall outside of Missouri's wrongful death statute, pursuable after his death by the personal representative of his estate. For this reason, the Court holds that Carol Samson is a proper plaintiff in this claim to the extent that not all of the constitutional violations alleged by Plaintiff resulted in DeBrodie's death.

4

The Court additionally notes that Carol Samson is designated as the Next Friend of Carolyn Summers as she pursues her wrongful death claim. State Defendants do not dispute her designation as Carolyn Summer's Next Friend.

**B. State Agencies Are Not Subject to Suit Under 42 U.S.C. § 1983**

Plaintiffs in Count V recite a § 1983 claim against the Missouri Department of Mental Health and its Division of Developmental Disabilities, asserting that these governmental entities are "persons" for the purpose of a § 1983 action. However, the Supreme Court has held that state agencies are not persons subject to suit under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983"); See also *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.* 948 F.2d 1084, 1086 (8th Cir. 1991) ("An agency exercising state power is not a "person" subject to suit under section 1983 if the agency is entitled to the state's sovereign immunity under the Eleventh Amendment."). DMH and DMH-DD are not persons subject to suit for the purpose of a § 1983 action. Accordingly, the Court will grant State Defendant's Motion to Dismiss Count V of the Second Amended Complaint as it pertains to the Missouri Department of Mental Health and its Division of Developmental Disabilities. Furthermore, because the Supreme Court in *Will* was clear that persons acting in their official capacities are not "persons" under § 1983, the Court will also grant State Defendants' Motion to Dismiss all Counts against the individual State Defendants in their official capacities.

**C. Plaintiffs Do Not Adequately Plead a Constitutional Violation Under the Due Process Clause of the U.S. Constitution**

State Defendants argue that the claims against the state employees in their individual capacities must also be dismissed because Plaintiffs do not state an adequate § 1983 claim in that

there is no underlying constitutional violation alleged. Plaintiffs in Count IV assert that State Defendants were responsible for establishing, enforcing, and training others regarding DMH policies and procedures to ensure the health and safety of disabled individuals like DeBrodie. Specifically, they argue State Defendants had a duty to establish and maintain the necessary policies, procedures, practices, and patterns to ensure that DeBrodie's guardians and caretakers were: 1) regularly conducting face-to-face contacts with disabled individuals or reporting instances of non-contact; 2) providing medical care; 3) certifying that disabled individuals are receiving necessary habilitation services, including food and clothing; 4) ensuring disabled individuals are in fact safely residing at their assigned facility; and 5) auditing or otherwise verifying the conditions of disabled individuals. Plaintiffs claim State Defendants' failure to establish and maintain these policies was a violation of DeBrodie's substantive due process rights under the Fifth Amendment of the U.S. Constitution. The right to personal security has traditionally constituted an "historic liberty interest" protected substantively by the Due Process Clause of the Fifth Amendment of the U.S. Constitution. *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). This right, derived from the Eighth Amendment of the U.S. Constitution, extends to those lawfully but involuntarily committed in unsafe conditions. *Youngberg v Romeo*, 457 U.S. 307, 315-316 (1982). See also *Hutto v. Finney*, 437 U.S. 678 (1978).

Plaintiffs do not assert a constitutional violation based on an allegation that any State Defendant took specific action that endangered DeBrodie or that any such Defendant had prior notice that DeBrodie or anyone similarly situated was imperiled. Instead, Plaintiffs are essentially asking the Court to find that State Defendants' violated DeBrodie's substantive due process rights by failing to create proper policies which, if enforced, could or should have prevented his injuries and death. However, the Due Process Clause generally does not confer an affirmative duty on the

government to provide for its citizens, even when such aid may be necessary to secure life or liberty. *Harris v. McRae*, 448 U.S. 297, 317-318 (1980); *Lindsey v. Normet*, 405 U.S. 56, 74 (1972). Inadequate public policy alone is rarely sufficient to support claims of a constitutional violation. Plaintiffs cite *Youngberg* to support the existence of such a duty in this case. In *Youngberg*, the Supreme Court held that when the State involuntarily committed an individual to its custody, it had a duty under the Due Process Clause to provide adequate food, shelter, clothing, medical care, and a reasonable amount of safety to that individual. 457 U.S. 307, 315-318 (1982). A similar duty exists as to inmates. See also *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.") In a later case discussing *Youngberg*, the Supreme Court explained that "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process clause . . ." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Plaintiffs attempt to analogize *Youngberg* to the instant case by asserting in their Suggestions in Opposition to Plaintiffs Motion for Summary Judgment (Doc. 95) that "Carl was under the direct care and supervision of the State of Missouri." The Court rejects this assertion. The facts as pled by Plaintiff indicate that the Public Administrator, not State Defendants, was lawfully appointed by the court to serve as the guardian of DeBrodie and as guardian committed him to the care of CCSS and Second Chance, both private entities. DeBrodie was at no point in the custody of the State of Missouri or restrained by any of the State Defendants.

A review of the Complaint makes it clear DeBrodie's freedom was restrained not by State Defendants but by the actions of his court-appointed guardian and conservator, including his

placement in a residential healthcare facility. The circuit court established DeBrodie's guardianship and the guardian appointed was the Public Administrator of Callaway County. While the Court acknowledges that State Defendants licensed, regulated, and partially funded Second Chance as well as CCSS, this does not transpose any of the State Defendants into the role of DeBrodie's guardian or caregiver. It also does not transform State Defendants into supervisors of the individuals employed by Second Chance, Callaway County, or CCSS.

Plaintiffs argue that *Youngberg* is nonetheless properly applied in this situation because DeBrodie was "wholly dependent on the State and its agencies and actors for every aspect of his life." Even taking this as true, it is not the holding of *Youngberg* that dependency alone creates an affirmative duty to care for DeBrodie that Plaintiffs aver. Instead, the Supreme Court is clear that the government's affirmative duty to protect an individual arises only "from the limitation which it has imposed on his freedom to act on his own behalf." *Youngberg*, 489 U.S. 189, 200 (1989). Plaintiffs state in their Complaint that the policies of State Defendants were inadequate to protect the life and well-being of DeBrodie. Accepting the facts as pled, this might demonstrate poor decision-making and/or implementation by the executive or legislative branches of state government, including possibly the State Defendants themselves. But it does not equate to a constitutional violation by State Defendants. The State Defendants failure to establish or implement better policies does not constitute an affirmative action restraining DeBrodie's freedom and thereby triggering the constitutional protections described in *Youngberg*. Because of this, the Court declines to find that State Defendants had a substantive duty to DeBrodie under the Due Process Clause of the United States Constitution. Consequently, the Court will grant State Defendants' Motion to Dismiss the claims against them for failing to state a claim upon which relief can be granted.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Motion to Dismiss the Second Amended Complaint as to the Missouri Department of Mental Health, the Missouri Department of Mental Health, Division of Developmental Disabilities, Mark Stringer, Valerie Huhn, Wendy Witcig, Marcy Volner, and Wendy Davis. (Doc. 69). Those claims are dismissed without prejudice. Since Plaintiff's Complaint contains no allegations that any State Defendant had actual notice of the alleged injuries suffered by DeBrodie, the Court declines to decide whether such notice would be sufficient to create a constitutional duty on the part of State Defendants. If during the course of litigation it is revealed that State Defendants undertook an affirmative action that had the effect of restraining DeBrodie's freedom or endangering him, or had notice of such an action, Plaintiffs are granted leave to file an amended complaint that includes a description of the action taken or notice received by State Defendants.

**IT IS SO ORDERED.**

DATED:	September 28, 2018

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**